# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| CRAIG YARBROUGH, Administrator of the Estate of Ralph Wayne Yarbrough, deceased, and on Behalf of the wrongful death beneficiaries of Ralph Wayne Yarbrough, | ) ) ) ) | |
| | ) | No. 2:22-cv-02126-TLP-tmp |
| Plaintiff, | ) ) | JURY DEMAND |
| v. | ) ) | |
| QUINCE NURSING AND REHABILITATION CENTER, LLC, d/b/a Quince Nursing and Rehabilitation Center, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This case arises from the alleged mistreatment of Ralph Wayne Yarbrough while at Quince Nursing and Rehabilitation Center, LLC ("Quince") in Memphis Tennessee. Plaintiff Craig Yabrough sued as the administrator of Ralph Yarbrough and on behalf of his wrongful death beneficiaries. Plaintiff sues many defendants other than Quince—Aurora Cares, LLC ("Aurora Cares"); DTD HC, LLC ("DTD HC"); D&N, LLC ("D&N"); Donald T. Denz; and Norbert A. Bennett (collectively "Defendants").[1] (ECF No. 1.)

---

[1] This Court has considered almost identical motions in different actions. *See*, *e.g.*, *Crawford v. Allenbrooke Nursing and Rehabilitation Center, LLC*, No. 2:21-cv-02054-TLP-tmp, 2021 WL 3926243 (W.D. Tenn. Sept. 1, 2021). In *Crawford*, the same Defendants moved to dismiss for lack of personal jurisdiction. And Defendants make the same arguments here as they did in *Crawford*. Defendants acknowledge in their motion that they are aware of this Court's decision in *Crawford* and other cases about the same parties. (ECF No. 10 at PageID 210.) But Defendants assert that they must raise these defenses to avoid waiver. (*Id.*) In any event,

Defendants move to dismiss Plaintiff's claims against them for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[2]  (ECF No. 10.)  Plaintiff responded.  (ECF No. 19.)  And Defendants replied.  (ECF No. 25.)  For the reasons below, the Court **DENIES** Defendants' motion.

## BACKGROUND

Plaintiff alleges these facts in the complaint.[3]  Plaintiff is a resident of Tennessee.  (ECF No. 1 at PageID 1–2.)  Quince is a domestic limited liability company that operates a nursing facility in Memphis, Tennessee.  (*Id.* at PageID 2.)  Mr. Yarbrough resided at the nursing home in April 2021 until Quince transferred him to Methodist University Hospital ("Methodist") for hip surgery after a fall.  (*Id.*)  Following surgery, Methodist discharged him back to Quince on April 29, 2021.  (*Id.*)  The next day, Quince transferred him back to Methodist.  (*Id.*)  Mr. Yarbrough then died at Methodist on May 1, 2021.  (*Id.*)  Plaintiff alleges that, while under Quince's care, Mr. Yarbrough suffered mental anguish, pain and suffering, and physical injuries that substantially contributed to his death.  (*Id.* at PageID 15.)

Because Defendants question jurisdiction here, the Court has to examine the complex ownership structure for Defendants.[4]  For starters, Defendant Aurora Cares is Quince's

---

because the facts and questions of law raised in the motions are substantially similar, this Court will follow suit and repeat much of its analysis from the *Crawford* action in this order.

[2] The Court interprets Defendants' claim that Plaintiff cannot hold them liable under the Tennessee Health Care Liability Act as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Similarly the Court treats Defendants' claim that Plaintiff cannot hold Mr. Denz and Mr. Bennett personally liable for Quince's negligence as a 12(b)(6) motion.

[3] The Court accepts all of Plaintiff's allegations as true under Fed. R. Civ. P. 12.  *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (discussing 12(b)(2) standard); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (discussing 12(b)(6) standard).

[4] For diversity jurisdiction, a limited liability corporation's citizenship is based on the citizenship of each of its members.  *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009); *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002).

management company.  (*Id.* at PageID 2–3.)  Aurora Cares is a New York limited liability company.  (*Id.*)  It is owned by other LLC's, Defendants DTD HC and D&N.  (*Id.*)

Defendants DTD HC and D&N are also both New York limited liability companies.  (*Id.* at PageID 3.)  DTD HC and D&N each own 50% of Quince.  (*Id.*)  Defendant Donald T. Denz and the Donald T. Denz Irrevocable Trust are the only members of DTD HC.  (*Id.*)  Defendant Norbert A. Bennett, the Norbert A. Bennett Children's Trust, and the Norbert A. Bennett Grandchildren's Trust are the only members of D&N.  (*Id.* at PageID 3–4.)

Mr. Denz is a citizen of New York.  (*Id.* at PageID 4.)  He is (1) the manager, majority member, and owner of DTD HC; (2) the Chief Executive Officer and Chief Financial Officer of Aurora Cares; and (3) a member of Quince's governing body.  (*Id.*)  Mr. Denz actively manages Quince and maintains its finance department, including Quince's accounts payable, payroll, accounts receivable, general ledger, and financial statement preparation.  (*Id.*)

Mr. Bennett is a citizen of New York.  (*Id.* at PageID 5.)  He is (1) the only manager and majority member of D&N; (2) the Chief Executive Officer of Aurora Cares; and (3) a member of Quince's governing body.  (*Id.*)  Mr. Bennett actively manages Quince and performs on-site visits, continually oversees Quince's operations, and controls the financial operations of Aurora Cares, Quince, and D&N.  (*Id.*)

The parties do not dispute that Quince is a proper defendant here.  (ECF Nos. 10 & 11.)  But Defendants argue that this Court lacks personal jurisdiction over the remaining defendants and that, even assuming the Court has personal jurisdiction, Quince is the only proper defendant under the Tennessee Health Care Liability Act ("THCLA").  (ECF No. 11 at PageID 228.)  So Defendants ask the Court to dismiss Defendants for lack of personal jurisdiction and for failure to state a claim.

The Court first explains its subject matter jurisdiction over this case.  Next the Court examines whether it has personal jurisdiction over Defendants.  Then the Court considers whether it should dismiss Defendants for Plaintiff's failure to state a claim.

## SUBJECT MATTER JURISDICTION

### I.      Legal Standard

Subject matter jurisdiction concerns "the courts' statutory or constitutional *power* to adjudicate the case."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis in original).  Under 28 U.S.C. § 1332, a district court has original jurisdiction over a civil action between citizens of different states when the amount in controversy exceeds $75,000.  "[T]here must be complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010).

A corporation is a citizen of every state "by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. 1332(c)(1).  A limited liability corporation on the other hand "ha[s] the citizenship of each partner or member." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).  And a trust has the citizenship of its trustees.  *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) (noting that because trusts bring or defend legal proceedings in their own name, courts look at citizenship of a trust's trustees for purpose of diversity jurisdiction).

### II.     Analysis of the Court's Subject Matter Jurisdiction

The parties here are diverse, and Plaintiff seeks over $75,000 in damages.[5]

---

[5] Plaintiff does not allege a specific amount of damages.  But Plaintiff seeks compensatory and punitive damages, including, but not limited to damages for medical expenses, pain and suffering, mental anguish, disability, and humiliation.  (ECF No. 1 at PageID 15, 22–23.)  With that in mind, the Court is satisfied that Plaintiff's allegations meet the amount in controversy requirement.

4

At the time of his death, Mr. Yarbrough was a Tennessee resident. (ECF No. 1 at PageID 1.) Plaintiff is also a Tennessee resident. (*Id.*) No Defendant is a resident of Tennessee—they are all New York residents. (*Id.* at PageID 2–5; ECF No. 11 at PageID 217.) Under diversity jurisdiction, limited liability companies have the citizenship of their members. *Delay*, 585 F.3d at 1005. Four defendants here are limited liability companies—Quince, Aurora Cares, DTD HC, and D&N. (ECF No. 1 at PageID 2–5.) The members of Quince and Aurora Cares are DTD HC and D&N. (ECF No. 1 at PageID 2.) And so the Court has to look at the citizenship of DTD HC and D&N's members.

The members of DTD HC are Mr. Denz and the Donald T. Denz Irrevocable Trust. (*Id.* at PageID 3.) Both Mr. Denz and the Trust's trustee, Martin J. Clifford, are citizens of New York. (*Id.*) The members of D&N are Mr. Bennett, the Norbert A. Bennett Children's Trust, and the Norbert A. Bennett Grandchildren's Trust. (*Id.*) Mr. Bennett is a citizen of New York, as is the Trusts' trustee, Ronald Bennett. (*Id.*)

And so, the members of all four limited liability companies are citizens of New York, meaning they are diverse from Plaintiff. As a result, because the amount in controversy is over $75,000, the Court has subject matter jurisdiction over this dispute. The Court now considers the standards for a motion to dismiss and specific jurisdiction.

## 12(b)(2) MOTION TO DISMISS FOR LACK OF JURISDICTION

### I.    Legal Standard for a 12(b)(2) Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(2), a party may, as Defendants have here, move to dismiss a claim for lack of personal jurisdiction. A plaintiff has the burden of proving a court has personal jurisdiction over a defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). And so, if a defendant properly supports its motion to dismiss, "the plaintiff may not

stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that

the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

In response to a Rule 12 motion, absent an evidentiary hearing, "the plaintiff must make

only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Id.*; *see

also Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020) ("Whether

discovery is permitted or not, the initial burden is on the plaintiff to make at least a prima facie

showing of jurisdiction." (citing *Theunissen*, 935 F.2d at 1458)). What is more, the court

considers the pleadings and affidavits in the light most favorable to the plaintiff and does not

consider "facts proffered by the defendant that conflict with those offered by the plaintiff."[6]

*Serras v. First Tenn. Bank Nat'l Ass'n*, 874 F.2d 1212, 1214 (6th Cir. 1989) (noting that any

other standard "would empower a defendant to defeat personal jurisdiction merely by filing a

written affidavit contradicting jurisdictional facts alleged by a plaintiff"); *see also Malone*, 965

F.3d at 505; *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).

Now the Court will turn to the legal standard for personal jurisdiction.

## II.    Legal Standard for Finding Personal Jurisdiction over Defendants

A court can have either "general or all-purpose jurisdiction," or "specific or case-linked

jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). No

one here argues that this Court has general jurisdiction over Defendants. (*See* ECF Nos. 11 at

PageID 224; 19 at PageID 280.) But the parties disagree about whether the Court has specific

jurisdiction over Defendants.

---

[6] Defendants submit several affidavits along with their motion to dismiss. (ECF Nos. 11-1, 11-2
& 11-3.) These affidavits contradict some allegations in Plaintiff's complaint. Because at this
point in the litigation, the Court must accept Plaintiff's allegations as true, the Court does not
consider Defendant's conflicting factual allegations.

A court has specific jurisdiction over a defendant when "the claims in the case arise from or are related to the defendant's contacts with the forum state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). "In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Id*. In Tennessee, a court has specific jurisdiction over a nonresident for "any basis not inconsistent with the constitution of this state of the United States." T.C.A. § 20-2-214(1)(6). So the Court has to determine whether exercising personal jurisdiction over Defendants violates the Due Process Clause of the Fourteenth Amendment. *See Malone*, 965 F.3d at 502.

Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Sixth Circuit applies a three-prong test to determine whether a court's specific jurisdiction complies with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

As for the first factor, requiring the defendant to "purposefully avail himself," "ensures that the defendant's actions create a 'substantial connection' to the forum state, such that the defendant 'should reasonably anticipate being hailed into court there.'" *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 471–72 (6th Cir. 2012) (quoting *Neogen Corp.*, 282 F.3d at 889). This first requirement is analogous "to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime

generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Neogen Corp.*, 282 F.3d at 891 (quoting *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1976)).

The Court will address each of these *Southern Machine* factors as it now turns to address whether it has personal jurisdiction over Quince, DTD HC, D&N, Mr. Denz, and Mr. Bennett.

### III.   Analysis of the Court's Personal Jurisdiction over Defendants

#### A.  Specific Jurisdiction over Quince

##### i.   Purposeful Availment

The Court first asks whether Quince purposefully availed itself in Tennessee.  A non-resident defendant need not be "physically present in the forum state" for a Court to have personal jurisdiction over that defendant.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996).  "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

So when determining whether a defendant has purposefully availed itself in the forum state, courts consider whether "the defendant deliberately has engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum."  *Id.* at 475–76 (internal citations omitted).  Deliberately contracting to supply services in a certain state can satisfy this requirement, particularly when the defendant "purposefully derive[s] benefits from interstate activities."  *CompuServe, Inc.*, 89 F.3d at 1266 (citing *Burger King Corp.*, 471 U.S. at 472–73).

Plaintiff here alleges that Aurora Cares is Quince's management company.  (ECF No. 1 at PageID 2.)  Because Quince is a nursing facility in Tennessee, Plaintiff claims that Aurora Cares purposefully availed itself "of the privilege of conducting business" in Tennessee. *Burger King Corp.*, 471 U.S. at 475–76.  Plaintiff also alleges that Aurora Cares has a contractual obligation to provide services to Quince.  (ECF No. 19 at PageID 280; s*ee also Crawford*, 2021 WL 3926243, at *5.)  And Defendants acknowledge that "Aurora Cares has a contract with Quince to provide certain administrative services to the facility."  (ECF No. 25 at PageID 653.)

Accepting, as it must, Plaintiff's allegations as true under Fed. R. Civ. P. 12, the Court finds that Aurora Cares intentionally engages in significant activity in Tennessee through its continuing contractual obligations with Quince.  Aurora Cares deliberately maintains a business relationship in Tennessee and provides management and administrative services to a Tennessee facility.  For these reasons, Aurora Cares purposefully availed itself of the benefits of acting in the state.  *See CompuServe*, 89 F.3d at 1265; *S. Mach. Co.*, 401 F.2d at 381; *Crawford*, 2021 WL 3926243, at *5.

### ii.     Basis for the Cause of Action

The Court next determines whether the cause of action arises from Aurora Cares's activities in Tennessee.  "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc.*, 89 F.3d at 1267.  This is a "lenient standard." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (finding that claim arose from defendant's contacts with state because "the operative facts [we]re at least marginally related to the alleged contacts" of defendant and state).

Plaintiff alleges that Aurora Cares failed to manage properly and provide appropriate services to Quince. (ECF No. 19 at PageID 276–277.) And as a result, Mr. Yarbrough suffered injuries and eventually died. (*Id.*) Plaintiff alleges that administrative decisions by Aurora Cares led to inadequate conditions, understaffing, and insufficient supplies at Quince. (ECF No. 1 at PageID 12–15, 17–19.) And Plaintiff contends that these administrative decisions contributed to Mr. Yarbrough's death. (*Id.*) So at this stage, accepting Plaintiff's allegations as true, the Court finds that Plaintiff has satisfied this factor by alleging that Aurora Cares's actions contributed to Mr. Yarbrough's injuries.

### iii.   Reasonableness of this Court's Jurisdiction

Finally the Court considers whether the exercise of its jurisdiction over Aurora Cares is reasonable. When a plaintiff meets the first two prongs of the *Southern Machine* test, "there is an inference that the reasonableness prong is satisfied as well." *Intera Corp.*, 428 F.3d at 618. It is not automatic, however. Generally, the court should also consider these other factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the other states' interest in securing the most efficient resolution of the controversy." *Id.*

Because Plaintiff meets the first two elements of the *Southern Machine* test, the Court infers that its jurisdiction over Aurora Cares is reasonable. *See Crawford*, 2021 WL 3926243, at *6. As for the other factors, even though travelling from New York will burden Defendants, Plaintiff has an interest in gaining relief and Tennessee has an interest in the litigation.[7] And

---

[7] Tennessee's long-arm statute allows a court to exercise personal jurisdiction over a person who transacts business in the state, contracts to supply services in the state, or who causes tortious injury in the state. T.C.A. § 20-2-223(a). Here Plaintiff alleges that Aurora Cares engages in business in Tennessee and supplies services to Quince in Tennessee. (ECF No. 1 at PageID 12–15, 17–19.) Plaintiff also claims that Aurora Cares is partially responsible for Mr. Yarbrough's

Tennessee's interest here is greater than any other state's interest.  So all in all this Court's exercise of personal jurisdiction over Aurora Cares is reasonable.

At bottom, the Court finds that Plaintiff makes a prima facie showing that this Court has personal jurisdiction over Aurora Cares.  The Court therefore **DENIES** Defendants' motion to dismiss Aurora Cares for lack of personal jurisdiction.  Next the Court turns to consider the arguments about the other Defendants.

## B.    Alter Ego Jurisdiction over DTD HC, D&N, Mr. Denz, and Mr. Bennett

### i.    Legal Standard for Alter Ego Jurisdiction

As for the remaining Defendants, Plaintiff argues that this court has personal jurisdiction under the "alter-ego" theory of personal jurisdiction.  (ECF No. 19 at PageID 281.)  Generally, there is a presumption (often called the "corporate veil") that a corporate parent is separate from its subsidiary.  *See Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008).  This means that a court's personal jurisdiction over a subsidiary does not typically extend to its parent corporation.  *Id.*  But under the alter ego theory of personal jurisdiction, a court can pierce the corporate veil and find personal jurisdiction over a parent company "if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purpose of jurisdiction."  *Id.* (quoting *Danton v. Innovative Gaming Corp.*, 246 F. Supp. 2d 64, 72 (D. Me. 2003)).

"[W]hether one corporation is an alter ego of another for jurisdictional purposes is controlled by state law."  *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 653 (Tenn. 2009).  Again the Court turns to Tennessee law.  Under Tennessee law, "[a]n alter ego or agency

---

injury.  (*Id.*)  So looking to § 20-2-223(a) for guidance, Tennessee has an interest in the current dispute.

relationship is typified by the parent corporation's control of the subsidiary corporation's internal affairs or daily operations." *Id.* at 652.

The party seeking to prove that a subsidiary is an alter ego of a parent company must show "(1) that the subsidiary corporation is a sham or dummy, (2) that the two corporations are, in fact, identical and indistinguishable, or (3) that the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent corporation." *Id.* at 653 (internal citations omitted.) So "the presumption of corporate separateness may be overcome by demonstrating that the parent corporation 'exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.'" *Id.* (quoting *Cont'l Banking Life Ins. Co. of the S. v. Bank of Alamo*, 57 S.W.2d 625, 632 (Tenn. 1979)). Now the Court will consider whether the remaining Defendants meet the requirements of an alter ego.

### ii. Analysis of this Court's Alter Ego Personal Jurisdiction

In short, for the Court to have personal jurisdiction over Defendants, Plaintiff must allege facts showing that DTD HC, D&N, Mr. Denz, and Mr. Bennett exercise complete control over Quince or Aurora Cares. DTD HC and D&N each own 50% of Quince. (ECF No. 1 at PageID 2–4.) And DTD HC and D&N are also the joint owners of Aurora Cares. (*Id.* at PageID 3.) Mr. Denz and Mr. Bennet own DTD HC and D&N, respectively. (*Id.* at PageID 3–6.) Plaintiff alleges that "Mr. Denz and Mr. Bennett control and mange Quince through DTD HC and D&N." (ECF No. 19 at PageID 281.) According to Plaintiff, "Mr. Denz and Mr. Bennett control the financial operations of Quince, select the members of the governing body for Quince, conduct on-site visits and have continual oversight of the operations at Quince." (*Id.*) Plaintiff alleges

also that Quince, Aurora Cares, DTD HC, and D&N served as "mere conduits" through which

Mr. Denz and Mr. Bennett conducted business, and that Mr. Denz and Mr. Bennett "completely

dominated and controlled the business affairs" of those entities.  (ECF No. 1 at PageID 7–8.)  At

this early stage of litigation, Plaintiff asserts enough facts to support this allegation.

Plaintiff claims that, through DTD HC and D&N, Mr. Denz and Mr. Bennett managed

and controlled Quince.  (*Id.*)  And both Denz and Bennett served on or selected the members of

Quince's governing body.  (*Id.* at PageID 3–4.)  Plaintiff asserts that Mr. Denz is the sole

manager and voting member of DTD HC.  (*Id.* at PageID 4.)  Mr. Denz is also the Co-Chief

Executive Officer and Chief Financial Officer of Aurora Cares.  (*Id.*)  According to the

complaint, Mr. Denz "is responsible for maintaining the finance department, which includes

accounts payable, payroll, accounts receivable, general ledger, and financial statement

preparation for [Quince]."  (*Id.*)  Plaintiff also contends that Mr. Denz controlled the financial

operations of Quince, Aurora Cares, and DTD HC.  (*Id.*)  Lastly, Mr. Denz is president and chief

financial officer of Quince.  (*Id.* at PageID 5.)

Meanwhile, Plaintiff alleges that Mr.  Bennett is the Co-Chief Executive Officer and

President of Aurora Cares.  (*Id.* at PageID 5–6.)  And as explained above, Mr. Bennett is the sole

manager and majority member of D&N.  (*Id.* at PageID 5.)  According to the complaint, Mr.

Bennett "actively manages" Quince and "is responsible for maintaining contact with [Quince]

and performing on-site visits, providing continuous oversi[ght] of the operations of the facility."

(*Id.*)  Again, Plaintiff also contends that Mr. Bennett controlled the financial operations of

Quince, Aurora Cares, and D&N.  (*Id.*)  Lastly, Mr. Bennett is chief executive officer of Quince.

(*Id.* at PageID 6.)

13

These facts suggests that Mr. Denz and Mr. Bennett have complete control over the management and operations of DTD HC, D & N, Aurora Cares, and Quince. *See Crawford*, 2021 WL 3926243, at *7–8. And Plaintiff alleges that Aurora Cares, DTD HC, D&N, Mr. Denz, and Mr. Bennett all report the same address "for either their registered agent, managers, officers, directors, and/or principal place of business." (ECF Nos. 19 at PageID 278; 19-2.) This all reflects that Mr. Denz and Mr. Bennett control DTD HC, D&N, Aurora Cares, and Quince. *See Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 451 (6th Cir. 2012) (finding that jurisdiction under alter ego theory where plaintiff alleged that parent corporation had control over commercial and business policies of subsidiary); *Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226, 247 (Tenn. Ct. App. 2005) (finding alter ego jurisdiction after considering factors including that defendant owned 100% of entity and shared same officers); *cf. Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1090 (6th Cir. 1989) (finding defendant was not a "mere passive owner" because defendant owned company, defendant's officers went to Tennessee, and entities shared officers).

Taking Plaintiff's factual assertions as true, the Court finds that Plaintiff presents enough evidence that Aurora Cares, DTD HC, and D&N are alter egos of Mr. Denz and Mr. Bennett.[8] The Court has already found that it has personal jurisdiction over Quince and Aurora Cares. And thus the Court also finds that it has personal jurisdiction over DTD HC, D&N, Mr. Denz and Mr.

---

[8] Defendants argue that the Tennessee Court of Appeals decision in *Hatfield v. Allenbrooke Nursing and Rehabilitation Center* is dispositive here. No. W2017-00957-COA-R3-CV, 2018 WL 3740565 (Tenn. Ct. App. Aug. 6, 2018). It is not. In *Hatfield*, the court found that Defendants were not alter egos of Allenbrooke under vicarious liability. *Id.* at *34–*42. But "[t]hat holding has no bearing at the motion-to-dismiss stage, where the decision turns on the pleadings." *Hardaway v. Quince Nursing & Rehab. Ctr., LLC*, No. 2:19-cv-2464, 2020 WL 4106440, at *13 (W.D. Tenn. July 20, 2020).

Bennett.  The Court therefore **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction.

### C.    The Fiduciary Shield Doctrine

Defendants next argue that, as corporate officers, Mr. Denz and Mr. Bennett are not liable here thanks to the fiduciary shield doctrine.  (ECF No. 11 at PageID 227.)  The Court finds this argument lacking.

"The 'fiduciary shield doctrine' provides that 'when an individual defendant is an officer of a corporation, a court may not exercise personal jurisdiction over the defendant based on actions taken in his or her corporate capacity.'"  *Sledge v. Indico Sys. Res., Inc.*, 68 F. Supp. 3d 834, 841 (W.D. Tenn. 2014) (quoting *Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc.*, 761 F. Supp. 2d 726, 730–31 (M.D. Tenn. 2011)).  That said, "[a]n officer of a corporation who is 'actively and personally involved in the conduct giving rise to the claim' is subject to personal jurisdiction in the forum state because he has purposely availed himself of the forum, just as the corporation has."  *Id.* (quoting *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000)).

Tennessee courts have rarely applied the fiduciary shield doctrine, and the Tennessee Supreme Court has not endorsed the doctrine.  *Simplex Healthcare, Inc.*, 761 F. Supp. 2d at 731 ("No Tennessee state court has ever applied the doctrine to bar jurisdiction."); *Sledge*, 68 F. Supp. 3d at 841.  What is more, the Sixth Circuit has held that due process does not require that courts apply the fiduciary shield doctrine.  *Simplex Healthcare, Inc.*, 761 F. Supp. 2d at 731; *Balance Dynamics Corp.*, 204 F.3d at 698.

Without repeating all the allegations the Court discussed when analyzing alter ego jurisdiction, Plaintiff alleges that Mr. Denz and Mr. Bennett actively manage Quince's daily

operations. (ECF No. 1 at PageID 3–6.) Mr. Denz maintains Quince's financing department and actively manages the facility, serving as Quince's president and chief financial officer. (*Id.* at PageID 4–5.) Mr. Bennett performs on-site visits and continuously oversees Quince's operations, serving as Quince's chief executive officer. (*Id.* at PageID 5–6.) And as the sole owners of Aurora Cares, DTD HC, and D&N, Mr. Denz and Mr. Bennett directly profit from Quince's operations. (*Id.* at PageID 2–9.)

Under the standard for Fed. R. Civ. P. 12(b)(2), Plaintiff alleges that Mr. Denz and Mr. Bennett were actively and personally involved in the conduct underlying Plaintiff's claims. The Court therefore finds that the fiduciary shield doctrine does not limit its jurisdiction here. The Court now considers Defendants' motion to dismiss for failure to state a claim.

## 12(b)(6) MOTION TO DISMISS

### I.   Legal Standards of a 12(b)(6) Motion to Dismiss

Courts assess whether a complaint states a claim upon which relief can be granted under the standards for Rule 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555–557 (2007). "Accepting all well-pleaded allegations in the complaint as true, the court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). To survive a motion to dismiss under 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Though a court will grant a motion to dismiss if a plaintiff has no plausible claim for relief, a court must "construe the complaint in the light most favorable to the plaintiff, accept its

allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Herhold v. Green Tree Servs., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

Defendants first argue that Plaintiff cannot sue them under the THCLA.  (ECF No. 11 at PageID 228.)  Then they argue that Plaintiff cannot hold Mr. Denz and Mr. Bennett personally liable for Quince's negligence.  (*Id.* at PageID 230.)  The Court rejects each argument in turn.

## II.     The Tennessee Health Care Liability Act

Under Tennessee Code Annotated § 29-26-102, "a health care liability action against a licensee may be brought only against the licensee, the licensee's management company, [or] the licensee's managing employees . . . ."  And a "passive investor shall not be liable" under the statute.  § 29-26-102(a).  Defendants argue that Quince is the sole licensee of the Tennessee facility, and so Quince is the only proper defendant under the THCLA.  (ECF No. 11 at PageID 229.)  And Defendants argue that Mr. Denz and Mr. Bennett are not liable because they are "passive investors."  (*Id.* at PageID 220.)

A licensee is a health care provider "that is legally responsible for all health care services provided."  § 29-26-101(a)(3).  A "management company" is "an individual or entity that contracts with, or receives a fee from, a licensee to provide . . . services to or for a licensee." § 29-26-101(a)(4).  These services include directly hiring or firing the licensee's employees; directly controlling the licensee's staffing levels; directly controlling the licensee's budget and expenditures; and directly implementing and enforcing the licensee's policies and procedures. *Id.*  And a "passive investor" is "an individual or entity that has an ownership interest in a

licensee but does not directly participate in the day-to-day decision making or operations of the licensee." § 29-26-101(a)(5).

Plaintiff's complaint alleges that Aurora Cares is the management company that oversees Quince's operation. (ECF No. 1 at PageID 2–3.) Plaintiff further alleges that DTD HC and Mr. Denz actively manage Quince and maintain its finance department. (*Id.* at PageID 3–5.) And, according to Plaintiff, D&N and Mr. Bennett actively manage and oversee Quince, perform on-site visits at the facility, and control the financial operations of Aurora Cares, Quince, and D&N. (*Id.* at PageID 3–6.) Taking these alleged facts as true, the Court finds that DTD HD and D&N both qualify as "management companies," and Mr. Denz and Mr. Bennett are more than just "passive investors." They are directly involved in the daily operations of Quince. *See* § 29-26-101(a)(4).

In sum, Plaintiff states a claim related to Aurora Cares, DTD HC, D&N, Mr. Denz, and Mr. Bennett. All in all Plaintiff "plausibly suggest[s] an entitlement to relief" against all Defendants. *See Iqbal*, 556 U.S. at 681. On that basis, the Court **DENIES** Defendants' motion to dismiss under the THCLA.

## III.    Mr. Denz and Mr. Bennett's Liability under New York and Tennessee Law

Defendants also argue that, under both Tennessee and New York law, Plaintiff cannot hold Mr. Denz and Mr. Bennett personally liable as members of a limited liability company. (ECF No. 11 at PageID 230–35.) This is true—unless Plaintiff pierces the corporate veil. *See Crawford*, 2021 WL 3926243, at *10.

As mentioned above, there is a presumption that a corporation and its officers or affiliated corporations are distinct legal entities. *Edmunds v. Delta Partners, LLC*, 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012). But, sometimes, courts may "pierce the corporate veil" and

18

hold owners of a limited liability company liable for the obligations of the corporation. *Id.* at 828–29.

As discussed in the section analyzing the Court's alter ego jurisdiction, Plaintiff's complaint alleges enough facts to support potentially piercing the corporate veil here. As a result, taking Plaintiff's allegations as true, the Court **DENIES** Defendants' motion to dismiss for failure to state a claim on these grounds.[9]

## <u>CONCLUSION</u>

As explained above, the Court has personal jurisdiction over all Defendants here. It has specific jurisdiction over Quince and Aurora Cares and their alter egos—DTD HC, D&N, Mr. Denz, and Mr. Bennett. And Plaintiff states a claim against all Defendants under the THCLA. The Court therefore **DENIES** Defendants' motion to dismiss.

**SO ORDERED**, this 18th day of July, 2022.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[9] Defendants ask for "an opportunity to be heard on these various issues before the Court," which the Court construes as a request for a hearing or oral argument. (ECF Nos. 10 at PageID 214; 25 at PageID 655.) But the Court is resolving the motion on the parties' written submissions. *See Malone*, 965 F.3d at 505. And the Court therefore **DENIES** Defendants' request for a hearing.